*Payne, Little & Jones* and *M. F. Goldstein*, for defendant.

---

## PHINIZY *et al.* *v.* WALLACE *et al.*

1. A testator, after providing for the payment of his debts, made certain special bequests. He then made the following provision as to the residue: ".Now, all the rest and residue of my estate, including the principal of the legacy left to Miss Mary Richardson for her life, I give and bequeath and devise to the following nieces: Annie Martin Phinizy, daughter of Leonard Phinizy of Augusta; Eliza Pickens Phinizy, daughter of Stewart Phinizy of Augusta; Susan Welborn Calhoun, daughter of Dr. A. W. Calhoun of Atlanta; and Annie Barrett Phinizy, daughter of Billups Phinizy of Athens; share and share alike; and I appoint Leonard Phinizy the trustee of his daughter Annie Martin Phinizy, Stewart Phinizy the trustee of his daughter Eliza Pickens Phinizy, Dr. A. W. Calhoun the trustee of his daughter Susan Welborn Calhoun, and Billups Phinizy the trustee of his daughter Annie

Barrett Phinizy. Should any of these named trustees refuse to act, he is empowered to name his successor from among the other trustees. Should all refuse to serve, then I appoint my brother, Jacob Phinizy, as the sole representative of the trust, he to serve without being responsible to any of the beneficiaries for his management of the trust. Should any of the legatees or beneficiaries be deceased at the time of the decease of this testator, then her share is to go to her father, if he is living, or, if he is dead, to go to his children in the same manner as provided for in his will, or, if he died without will, in the manner the law directs. I direct the trustee of each beneficiary to invest the amount said beneficiary receives under the provisions of this will for the sole benefit of the beneficiary, the interest said amount brings annually to be added to the principal; this plan to be followed until said beneficiary attains the age of nineteen (19) years, when said trustee shall turn over to the beneficiary the entire income from said trust, she to do with the same as she thinks proper and best. When each beneficiary attains the age of nineteen (19) years, said trustee shall settle the full principal upon her and her children, male and female. Should any of the beneficiaries die before reaching the age of nineteen (19) years, then her share together with the accumulated interest shall go as provided for in the case of a beneficiary being deceased at the death of his testator. If, after the marriage of any of the beneficiaries, a child is born and survives its mother, and then also dies leaving no issue, the share it obtained from its mother shall revert to the living brothers and sisters of the mother, or, in case of the death of the mothers, brothers, and sisters, to their natural heirs. Should any of the beneficiaries after marriage die without issue, then her share is to go in the manner provided for a beneficiary dying before attaining the age of nineteen (19) years." At the time of the testator's death the four nieces named were young girls. All of them lived to be of age. One of them married and had a child born to her. They filed an equitable petition, alleging that they took in fee simple the property covered by the residuary clause, and seeking to have a partition by sale and division of the proceeds. *Held*, that, under the common law as modified by the statutes of this State, the four nieces of the testator, under the item of the will above quoted, did not take a fee-simple estate, but each took a beneficial interest covering the entire fee in one share, subject to be reduced to a life-estate with remainder over to her children, if she should marry and have a child or children, and subject to certain other limitations over, by way of executory devises, upon the happening of other contingencies specified.

2. Relatively to the rule against perpetuities, as it is declared in the Civil Code (1910), § 3678, the limitation over, after the death of each niece, in favor of her child or children, was valid.

3. The limitation over in favor of the brothers and sisters of each niece, should she have a child and it should survive her and then die without issue, is invalid, because the condition may not happen, if at all, within the time limited by the rule.

4. The limitation over in favor of the father of a niece, if she should marry and die without issue (treating issue as meaning issue at the

time of her death, in accordance with the statute of this State), is valid.

5. The limitation over in favor of brothers and sisters of a niece, in the event the niece should survive her father, is valid, as the persons who should take would be determined at the time of the death of the niece.

6. It was error for the presiding judge to decree that the four nieces of the testator took a fee-simple estate, and that the property should be sold by commissioners, and the proceeds be divided among them. He should have required a reinvestment of each share in accordance with the valid provisions of the fifth item of the will of the testator.

JUNE 23, 1911.

Equitable petition. Before Judge Brand. Clarke superior court. June 27, 1910.

Harry H. Phinizy died testate on May 1, 1890. The first four items of his will, after providing for the payment of debts, made certain specific legacies. The fifth item was as set out in the first headnote. The four nieces of the testator survived him and became of age. Two of them married, and one of them had a child born to her. The fathers, who were named as trustees, were in life. There were also brothers and sisters of the nieces. The four nieces filed an equitable petition, claiming that they were joint tenants with fee-simple interests, and praying for a sale of the property and a distribution of the proceeds among them. The fathers of the plaintiffs were made defendants, individually and as trustees. By interventions various persons were made parties, alleging that they were the brothers and sisters of the plaintiffs, and the only child of one of them. The minors appeared by guardians ad litem. The case was submitted to the presiding judge without a jury. He held that the nieces were owners of the property in fee simple, and directed a sale and division of the proceeds among them. The other parties excepted.

*Leonard Phinizy, King & Spalding & Underwood, Max Michael,* and *Carlisle Cobb,* for plaintiffs in error.

*Cobb & Erwin* and *John L. Hopkins & Sons,* contra.

LUMPKIN, J. (After stating the foregoing facts.) We have rarely seen so many perplexing provisions crowded into a single item of a will. We have found no will sufficiently like it to derive much aid from authorities in its construction. After certain special bequests had been made in other items, the fifth item dealt with the residue of the testator's property. Its provisions, in the order in which they occur, may be thus summarized: (1) A devise

and bequest to four named nieces of the testator, daughters of his three brothers and a sister, share and share alike. (2) The appointment of the father of each niece as her trustee. (3) A provision in case any or all of the trustees should refuse to act. (4) If any niece should die before the testator, her share should go to her father, if living; or, if he should be dead, "to go to his children in the same manner as provided for in his will, or, if he died without will, in the manner the law directs." (5) A direction to the trustee of each beneficiary to invest the amount the "beneficiary receives" under the provisions of the will "for the sole benefit of the beneficiary;" that the interest should be added to the principal annually, and this plan should be followed until the beneficiary should reach the age of 19 years, when the trustee should turn over to her the entire income from the trust. (6) "When each beneficiary attains the age of nineteen (19) years, said trustee shall settle the full principal upon her and her children, male and female." (7) If any beneficiary should die before reaching the age of nineteen years, then her share, together with the accumulated interest, should go as provided in case of her death before the testator. (8) "If after the marriage of any of the beneficiaries, a child is born and survives its mother, and then also dies leaving no issue, then the share it obtained from its mother shall revert to the living brothers and sisters of the mother, or, in case of the death of the mothers, brothers, and sisters, to their natural heirs." (9) "Should any of the beneficiaries after marriage die without issue, then her share is to go in the manner provided for a beneficiary dying before attaining the age of nineteen (19) years," which was the same as the provision if she should die before the testator. The presiding judge held that the nieces took a fee-simple estate.

It does not appear on what grounds he based his decision. Most probably it rested on one or more of the following grounds: (1) That all words of survivorship and limitation over in the will were to be referred to the time of the testator's death or the time when each niece became nineteen years of age, and that as all of the nieces survived the testator and became nineteen years of age without being married, these provisions were at an end and a fee-simple estate vested in the nieces. (2) That the testator attempted to create an estate tail in each of his nieces, and, under our code, a

fee-simple estate resulted.    (3) That, the children of the nieces being thus eliminated, the other limitations over were violative of the rule against perpetuities, and could be disregarded.

1.    The first ground suggested which was urged by counsel for the defendants in error would furnish an easy solution, if we could adopt it.  But we are unable to do so.  It is undoubtedly the rule declared by our code, that, "in construing wills, words of survivorship shall refer to the death of the testator in order to vest remainders, unless a manifest intention to the contrary appears." Civil Code (1910), § 3680.  The trouble in this case is that we think a manifest intent to the contrary appears.  The testator expressly provided for the devolution of the estate, if a niece should die before he died.  If the other provisions as to the death of a niece, with or without issue, should be held to provide for such death before that of the testator, they would be mere surplusage.  Nor can it be declared that the testator limited all such provisions to the occurrence of the death of a niece before reaching the age of nineteen.  In one instance, he distinctly provided for that contingency. In another he provided for a case where a niece should die leaving a child and that child should also die "leaving no issue."  He could hardly have contemplated that such possibilities would all be solved before the niece reached nineteen years of age.

Did the testator intend to create an estate tail in each of his nieces, so that, under our code, a fee-simple estate in them resulted? Civil Code (1910), § 3661.  Whom did the testator have in mind as objects of his bounty, as indicated by mentioning them in this item of the will?  First, his four nieces; second, the children of his four nieces; third, the fathers of his four nieces; and fourth, the brothers and sisters of such nieces.  It is evident that he contemplated the children of nieces as persons who might take some character of interest.  Shall it be held that the interest which he thus sought to confer was an entailment, and therefore illegal, under the law of the State?

If the clause which provided that when each beneficiary should attain the age of nineteen years the trustee should settle the full principal "upon her and her children, male and female," stood alone, and were treated as a gift to the niece and her children, she having no children either at the time when the testator died, or upon arrival at the age of nineteen years, under the common law

an estate tail would doubtless have been created. This would have been enlarged by our statute into a fee-simple estate. *Wiley, Parish & Co.* v. *Smith,* 3 *Ga.* 551. But this clause does not stand alone. If it created a fee-simple estate in the nieces, it was nevertheless followed by limitations over upon certain contingencies. If those contingencies were such as would, at common law, have created an estate tail by implication, then by section 3661 of the Code of 1910 it is declared that "Limitations which, by the English rules of construction, would create an estate tail by implication in this State shall give a life-estate to the first taker, with remainder over in fee to his children and their descendants, as above provided; and if none are living at the time of his death, remainder over in fee to the beneficiaries intended by the maker of the instrument." If the will does not exhibit an intention to create a life-estate, with remainder over, and the limitations over are not such as would have created an estate tail by implication at common law, nevertheless a base fee would result from later provisions, unless they can be rejected as invalid. The various clauses of this item should be construed together. If there should be an unavoidable inconsistency between a prior and a later clause, the last expression of the testator's will would control.

While there were some expressions in the opinion in *Burton* v. *Black,* 30 *Ga.* 638, which went beyond the necessities of the case decided, it is now the well settled rule of construction in this court, that, unless there be something to indicate a contrary intent on the part of the testator, a devise or bequest to a named person, followed by a provision that if he should die childless the property shall pass to some other person, conveys to him a fee, subject to be divested upon his dying childless, and does not of itself confer upon any child which he may have any interest or estate in remainder. *Hill* v. *Terrell,* 123 *Ga.* 49 (51 S. E. 81). The testator, however, may indicate a contrary intent; and if there are words in the will, in addition to the mere devise to one with limitation over upon condition of dying without children or issue surviving him, showing a different intention, such intention will be given effect. We must look to the will to see whether there are such words. The devise or bequest is not directly to each niece and her children, upon the death of the testator or upon her arrival at nineteen years of age. The testator directed that the trustee of each niece,

upon her reaching that age, should settle "the full principal upon
her and her children, male and female." This expression indicated
that the testator had in mind her children as objects of his bounty.
He could hardly have anticipated that all four of his nieces (then
little girls) would have children, male and female, before reaching
the age of nineteen. The settlement which he intended must have
been an entailment, or a settlement upon her, with remainder or
devise over to her children, should she marry and have a child or
children (not mentioning for the present the other limitations).
A settlement of the latter character would not, under the circum-
stances, appear to do violence to the testator's intent. In 25 Am. &
Eng. Enc. Law (2d ed.), 628, it is said: "In conveyancing, settle-
ment is the limitation of real or personal property or the enjoy-
ment thereof to several persons in succession, prescribing the mode
of holding, enjoying, and disposing of it." In Micklethwait *v.*
Micklethwait, 4 C. B. N. S. 858, it is said that "the meaning of a
'settled' estate, whether in legal or popular language, as contra-
distinguished from an estate in fee-simple, is understood to be one
in which the powers of alienation, of devising, and of transmission,
according to the ordinary rules of descent, are restrained by the
limitations of the settlement; it would be a perversion of language
to apply the term 'settled' to an estate taken out of settlement,
and brought back to the condition of a fee simple." See also Bouv.
Law Dict. "Settlement, Deed of."

Estates tail are prohibited and abolished in this State. Gifts
or grants to one and his children, he having no children when the
estate vests, convey an absolute fee. But "estates tail being illegal,
the law will never presume or imply such an estate." Civil Code
(1910), § 3661. Again, in declaring a limitation over if a niece
should marry and die leaving a child surviving, and such child
should then also die, leaving no issue, it was by the will directed
that "the share it obtained from its mother shall revert," etc. Thus
we have on the part of the testator a direction that the trustee shall
settle the property upon the niece and her children, and a reference
to a share which a child of a niece will obtain from its mother.
While it must be conceded that the will is not free from doubt, in
view of the rules of construction laid down by our code (which
modify the common law and make a material change in the rule
in Shelley's case), it should be held that the intention of the tes-

tator was to direct a settlement which he could lawfully make, rather than to create a fee tail, which he could' not lawfully do. A fee may be limited upon a fee in this State. Civil Code (1910), § 3658. The care with which the testator made provisions to cover various possibilities renders highly improbable the idea that he intended an incomplete scheme of disposition and the creation of an intestacy as to the share devised and bequeathed to any one of his nieces, should she survive him and live to be more than nineteen years of age, but die without marrying, no express provision being made for such a case. It is much more probable that he intended to give to each niece one share in fee, but subject to be reduced or divested on certain contingencies. In the light of the entire fifth item of the will, we think the proper construction to be put upon it is that each of his four nieces took a beneficial interest amounting to the entire fee in one share, but subject to be reduced to a life-estate, with remainder over to the child or children of such niece, if she should marry and have such child or children; and with limitations over to others, by way of executory devises, upon the contingencies set forth.

In *Holt* v. *Bowman*, 33 *Ga. Supp.* 129, a testator by one item of his will devised and bequeathed to his daughter certain negroes and a half interest in certain land, and then proceeded: "All of which said property herein given I will and direct to be vested and given in proper and legal manner to my said daughter, and to her children, free from the debts or disposition of her present or any future husband." By another item the testator directed that certain other property should be given to his daughters, of which the legatee under the previous item was one, and then added: "The shares coming to my several daughters and their children to be secured to them in legal manner and form, as heretofore directed and specified in this will." The daughter then had three children. It was held that the daughter named took an estate for life in the property bequeathed to her, with remainder to her children born or to be born. In the opinion it was said: "What does the testator mean when he wills and directs the property to be given in proper and legal form to his daughter Julia, and to her children, free from the debts or disposition of her present and any future husband? And then again, the shares coming to my daughters and their children to be secured to them in legal manner and form, as

heretofore directed and specified in this will? He means what the words plainly indicate—not that the daughter and children should take as joint tenants—such a disposition requires no such terms. He intended a settlement, which word of itself imports the settlement of the property upon the mother for life, remainder to her children, born or to be born."

2–5. Having determined what was the character of the estates created, the next question which presents itself is whether any of the limitations over are invalid as violating the rule against perpetuities. "Limitations of estates may extend through any number of lives in being at the time when the limitations commence, and twenty-one years, and the usual period of gestation added thereafter. A limitation beyond that period the law terms a perpetuity, and forbids its creation. When an attempt is made to create a perpetuity, the law gives effect to the limitations not too remote, declaring the others void, and thereby vests the fee in the last taker under the legal limitations." Civil Code (1910), § 3678. In Gray's Rule against Perpetuities, § 201, it is said that "No interest subject to a condition precedent is good, unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest."

Let us apply this test, as modified by our code, to the limitations over provided by the item of the will under consideration. The provisions in case of the death of a niece before that of the testator, or before arriving at the age of nineteen, may be omitted from consideration, except in so far as they are embodied by reference in other provisions, because none of the nieces died before the testator or before reaching nineteen years of age. The limitations over after the death of each niece were as follows: (1) In favor of her child or children. (2) In favor of her brothers and sisters, if after being married and having a child born such child should survive her but die without issue. (3) In favor of the father of the niece, if she should marry and die without issue, if the father should be living. (4) In favor of the children of the father if she should marry and die without issue, and the father should be dead when the niece dies. As to this contingency it was declared that the share should go to the children of the niece's father in the same manner as provided for in his will, or, if he should die without a will, in the manner the law directs.

Relatively to the rule against perpetuities, the limitation over to children of nieces is of course good. The limitations over in favor of the brothers and sisters, should a niece have a child and it should survive her and die without issue, is bad. This deals with a child not in being when the will took effect by the death of the testator, and which might never be born, or, if born, might not die within twenty-one years. So that the limitation over to the brothers and sisters might not be determinable within the time limited by the rule. The limitation over in favor of the father of a niece, if she should marry and die without issue (treating issue used in this connection as meaning issue at the time of her death, as provided in Civil Code (1910), § 3662), is valid. The limitation in favor of children of the father, in the event the niece should survive her father, and die without issue, is valid, because the person to take would be determined upon the death of the niece. The power in the niece's father by will to discriminate among such children, if he should die before she did, was one which essentially had to be exercised before his own death, and hence before the death of the niece. If he did not exercise it, the law would determine the distribution.

6. There is no exception to that part of the decree directing a sale to be made, but the plaintiffs in error contend that the proceeds should be reinvested upon the terms and limitations contained in the fifth item of the will. This collaterally involves the power to make a sale and reinvestment. In regard to the ability to render a valid decree of sale binding upon parties who may not now be in existence, there is some difficulty of determination. But the general trend of modern authority is not favorable to tying up property and preventing sales, especially where necessary for the protection and preservation of the corpus, if they can be legitimately made. Here it appears to be conceded that on account of the character of the property, the expensiveness of keeping in repair a brick building on a portion of it, the necessity for further heavy expenses in the near future, and its indivisible character, it is for the advantage of all parties that it should be sold. The fifth item of the will, in the first part thereof, stated that the testator gave, bequeathed, and devised the residue of his property to his four nieces, naming them, and appointed the father of each niece as her trustee. Later it directed each trustee, as the niece should

34

become of the age of 19, to settle the full principal upon her and her children. This power included something more than merely acting as trustee for the niece for life. A settlement generally involves a conveyance of the property. So that the testator evidently contemplated that the trustees should have an added authority beyond that of simply acting as trustees of life tenants. The testator evidently intended a division of the property, so that each share should be held in severalty, and that the settlement directed should be made as to each share separately, by the respective trustees. It was not his intention that the four nieces or the trustees should be bound together permanently as tenants in common. The estate was not divided, nor was the settlement made when the nieces arrived at the age of nineteen, as directed by the testator. The executors made a deed to the four trustees, and the shares have remained in common. In order to carry out the direction of the testator, it is necessary to have a division. Owing to the character of the property, partition can not be made in kind. A sale is necessary. To hold that no sale can be made would, in effect, be to prevent the testamentary scheme from being fully carried into effect. Under the facts, equity has jurisdiction, and may give a complete remedy. It was alleged that there were before the court as plaintiffs or defendants, or by intervention, the nieces, their fathers individually and as trustees, the only child of one of the nieces who had married, and the brothers and sisters of the nieces. Under the terms of the will and with all these parties in interest before the court, we think that a valid decree of sale can be made, although it may be possible for other children, or brothers and sisters of nieces, to be born. We deem it unnecessary to enter into a discussion as to when unborn persons may be bound by a decree for the sale of property generally. It is sufficient to deal with the present case on its facts. Those who may desire to pursue the general subject will find interesting discussions of it in the following cases: Kent v. Church of St. Michael, 136 N. Y. 10 (32 N. E. 704, 18 L. R. A. 331, 32 Am. St. R. 693) ; Hale v. Hale, 146 Ill. 227 (33 N. E. 858, 20 L. R. A. 247) ; Gavin v. Curtin, 171 Ill. 640 (49 N. E. 523, 40 L. R. A. 776) ; Bofil v. Fisher, 3 Rich. Eq. 1 (55 Am. D. 627) ; Faulkner v. Davis, 18 Grat. 551 (98 Am. D. 698) ; *Richards* v. *East Tenn., Va. & Ga. Ry. Co.,* 106 *Ga.* 614 (33

S. E. 193, 45 L. R. A. 712); *Brown* v. *Brown,* 97 *Ga.* 531 (25 S. E. 353, 33 L. R. A. 816).

From the above discussion it will be seen that in our opinion the presiding judge erred in decreeing that, upon a sale by the commissioners appointed by him, the proceeds (after paying costs and expenses) should be divided among the nieces, who should take as owners in fee simple. He should have required a reinvestment of each share of the proceeds in accordance with the valid provisions of the will of the testator as above set forth.

*Judgment reversed. All the Justices concur.*