GILMORE, executrix, *et al. v.* GILMORE *et al.*

No. 15661. JANUARY 9, 1947.

E. W. Jordan, for plaintiffs. Harris & McMaster, for defendants.

DUCKWORTH, Presiding Justice. The sole question here presented is whether or not the successor trustees appointed under the will of Thomas W. Gilmore became vested with the same powers lodged in him by the will of his brother, John D. Gilmore, as to the management and control of his estate.

It is the established law of this State that, where the powers conferred by deed or will upon a trustee in the management and control of property for named beneficiaries are personal and discretionary to the trustee, such powers can not be exercised by a successor; but that, if the exercise of the powers so conferred is imperative or mandatory in all events, the powers are incident to the office and may be exercised by a successor trustee, whether appointed by the court or provided for in the trust instrument. *Freeman v. Prendergast,* 94 *Ga.* 369 (21 S. E. 837); *Henderson v. Williams,* 97 *Ga.* 709 (25 S. E. 395); *Simmons v. McKinlock,* 98 *Ga.* 738 (1) (26 S. E. 88); *Bailie v. Carolina B. & L. Asso.,* 100 *Ga.* 20 (28 S. E. 274); *Healh v. Miller,* 117 *Ga.* 854 (44 S. E. 13); *Luquire v. Lee,* 121 *Ga.* 624, 629 (49 S. E. 834); *Maynard v. Greer,* 129 *Ga.* 709 (2) (59 S. E. 798); *Vernoy v. Robinson,* 133 *Ga.* 653 (66 S. E. 928). Upon an application of this rule to the facts of the present case the conclusion is irresistible that the successor trustees named in the will of Thomas W. Gilmore were

not vested with the broad powers conferred upon him as trustee by the will of John D. Gilmore, though it is clear, by item two of the will of Thomas W. Gilmore, that he attempted to confer upon the petitioners as successor trustees of the estate of John D. Gilmore "all the powers lodged by said will" in him. This conclusion is induced by the fact that the powers vested in Thomas W. Gilmore by item five of the will of John D. Gilmore are obviously personal and discretionary to the named trustee, his brother, and in no wise mandatory or imperative as an incident to the office of trustee. Nor, under the principle that in determining the nature and extent of a power given in a will the intention of the testator, as gathered from the whole instrument, must be given effect, does the language in item five of the will of John D. Gilmore, "generally do any and all things that he may deem necessary, or that I might do were I living," authorize the inference that the powers conferred upon Thomas W. Gilmore as trustee were such as included the right in him to appoint a successor trustee with all the powers lodged in him. Since these words of general import follow the designation of specific powers which are clearly personal and discretionary to the trustee named in the will of John D. Gilmore, they are to be construed to have been used, not in the broad sense which they might have if standing alone, but, under the applicable ejusdem generis rule, as related to the preceding language delegating more definite and particular powers. See *Fleming* v. *Rome*, 130 *Ga.* 383, 386 (61 S. E. 5). As stated in *Beavers* v. *LeSueur*, 188 *Ga.* 393, 403 (3 S. E. 2d, 667), "It is a well-recognized rule of construction that when a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis with the things specifically named, unless, of course, there is something to show that a wider sense was intended." So construed, the general authority is one relating to the discretionary routine administration and control, in the lifetime of Thomas W. Gilmore, of the estate of John D. Gilmore, and not an authority under which Thomas W. Gilmore might appoint by will a successor trustee with all the powers lodged in him that were conferred by John D. Gilmore upon his brother, Thomas W. Gilmore. It is to be noted that, immediately following the language just quoted, the testator provided that it was the scheme of his will that in the

management and control of his estate his "said brother" shall have the same rights, powers, and privileges that the testator might have if in life, thus evidencing by his choice of the words, "my brother," instead of using the word "trustee," that the grant of the broad powers was in consideration of the close relationship between him and his brother and his confidence in his brother. In item two he provided that Thomas W. Gilmore might by will name a successor trustee "to handle the estate during the life of my said wife and during the minority of any child, or children that may be living at his death," but without adding, as he doubtless would have done if he had also desired that the powers vested in his brother, Thomas W. Gilmore, be equally vested in a successor trustee, "with all the powers vested in my brother, Thomas W. Gilmore." The provisions of the will of John D. Gilmore are plain and unambiguous, and however desirable it might appear from evidence introduced that the management and control of his estate be continued by the successor trustees under the broad powers which had been lodged in the original trustee, such parol evidence can not be received for the purpose of showing an intent contrary to that plainly manifested by the unambiguous language of the will itself. *Hungerford* v. *Trust Co. of Georgia,* 190 *Ga.* 387 (9 S. E. 2d, 630); *Snellings* v. *Downer,* 193 *Ga.* 340 (18 S. E. 2d, 531).

Counsel for the plaintiffs in error concede that the rule of law we have followed is in conformity with the common law, but contend that the authority of the successor trustees to exercise the powers lodged in the original trustee is to be found in an act of 1937 (Ga. L. 1937, p. 481), amending the Code, § 37-607. As it appears in the supplement to the Annotated Code of 1933, the Code section as amended, 37-607, provides: "Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised. [In the absence of stipulations to the contrary in the instrument,] the time, place, and manner of sale shall be that pointed out for public sales. Unless the instrument creating such power specifically provides to the contrary, a personal representative, heir, heirs, legatee, devisee, or successor of the grantee in a mortgage, deed of trust, deed to secure debt, bill of sale to secure debt, or other like instrument, or an assignee thereof, or his personal representative, heir, heirs, legatee, devisee, or successor may exercise any power therein contained." It

is urged by counsel for the plaintiffs in error that the statute makes powers of sale applicable to "deeds of trust" and "other like instrument," and vests in the successor to the grantee in the instrument "any power therein contained," and that the statute applies to powers in wills that do not provide "specifically to the contrary." The Code section which was amended by the act of 1937, supra, is a codification of language used in *Calloway* v. *People's Bank,* 54 *Ga.* 441; 450, which case dealt with a mortgage containing a power of sale in the event of non-payment of the debt secured, and not with an instrument where, as in the present case, the property was forever alienated. The principle announced was codified in a section under a title that is now Title 37-6 of the present Code, which was formally adopted by the General Assembly by an act approved on February 14, 1935, as prepared and arranged by titles by the Code commissioners duly appointed. This Title 37-6 deals with the principles of equitable relief and grounds for and objects of such relief, as pointed out in the brief of counsel for the defendants in error; and the Code section as amended by the act of 1937, supra, is applicable only to instances where a creditor is seeking to sell property to enforce the payment of a debt or demand secured by such an instrument as is referred to in the Code section as amended. If, as suggested by counsel for the plaintiffs in error, this section as amended should be construed to embrace an instrument like that here involved, a will forever disposing of the property of the testator after death, and providing, without more, for the appointment of a successor trustee, and it be said that such successor trustee should thereby be vested with all the broad powers of the original trustee, it might be urged with equal plausibility that a personal representative, heir, legatee, or devisee would likewise succeed to all such powers. However, the language of the act of 1937, supra, forbids any reasonable construction other than that the words, "other like instrument," refer to an instrument of the same specific nature as those enumerated immediately before such language—instruments which are given as security for a debt or demand and conferring the power to enforce payment—and not instruments creating trusts and manifesting an intention to forever alienate the property which is the subject-matter of the trust. This view is reinforced when we observe that the subject-matter of a trust as here involved, and the powers, duties, and liabilities of a trustee are codified in a separate Title of the Code, to wit, Title 108.

·It is also urged by counsel for the plaintiffs in error that, if the above-stated Code section as amended is not conclusive on the question here presented, *Freeman* v. *Prendergast,* 94 *Ga.* 369 (21 S. E. 837), *Coleman* v. *Cabaniss,* 121 *Ga.* 281 (48 S. E. 927), and *Wadley* v. *Jones,* 138 *Ga.* 223 (75 S. E. 325), are authority for the contention that the successor trustee here became vested with all the powers of the original trustee. It is true that in each of the cited cases the powers in question were held to have devolved upon the successor trustee, but the facts are ·quite dissimilar to those in the present instance, and the rulings there do not require a ruling different from that here made.

*Judgment affirmed. All the Justices concur, except Wyatt, J., who dissents.*